IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JACOB KLEINSCHNITZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO.  1:13-cv-0209-MEF |
| ) | (WO – Do Not Publish) |
| WILLIAM PHARES, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jacob Kleinschnitz ("Kleinschnitz") brings suit against Defendants Officer William Phares ("Phares"), Police Chief Gregory Benton ("Benton"), and the City of Dothan (collectively, "Defendants") for violations of his constitutional rights under 42 U.S.C. § 1983 and for various state law claims.[1]  The suit arises out of Phares's arrest of Kleinschnitz for obstructing governmental operations after Kleinschnitz failed to stop his vehicle promptly when ordered by Phares.  Defendants filed a Motion to Dismiss portions of Kleinschnitz's complaint on the grounds that Kleinschnitz fails to state a claim on which relief can be granted, as well as on the grounds of qualified immunity and state law immunity (Doc. #9). For the reasons discussed herein, Defendants' motion to dismiss is due to be GRANTED IN PART and DENIED IN PART.

---

[1] All claims are brought against Phares and Benton in their individual capacities.  (Doc. #1.)

### I. JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1343(a), and 1367. Additionally, Defendants have not argued that the Court does not have personal jurisdiction over them. Pursuant to 28 U.S.C. § 1391(b), venue is appropriate in this district.

### II. STANDARD OF REVIEW

In considering a Rule 12(b)(6) motion to dismiss, the court accepts the plaintiff's allegations as true and reads them in the light most favorable to the plaintiff. *Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993) (citation omitted). Further, a district court must favor the plaintiff with "all reasonable inferences from the allegations in the complaint." *Stephens v. Dep't of Health and Human Servs.*, 901 F.2d 1571, 1573 (11th Cir. 1990).

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint does not state a facially plausible claim for relief if it shows only "a sheer possibility that the defendant acted unlawfully." *Id.* While a complaint need not contain detailed factual allegations to survive a Rule 12(b)(6) motion, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotation and citations omitted). Absent the necessary factual allegations,

"unadorned, the-defendant-unlawfully-harmed-me accusation[s]" will not suffice. *Id.* Courts are also not "bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

### III. STATEMENT OF FACTS

Since this case is before the Court on a Motion to Dismiss, the Court accepts the following allegations in Kleinschnitz's complaint as true:

Kleinschnitz is a twenty-year-old resident of Houston County, Alabama, and a student at Wallace Community College. Kleinschnitz also works full time at the Publix supermarket in Dothan. At around 11:20 p.m. on May 9, 2012, Kleinschnitz ended his shift at Publix and met a co-worker at a nearby McDonald's for a meal. Kleinschnitz then left McDonald's and began to take his normal route home while driving at or below the posted speed limit.

After exiting the roundabout on Watley Drive, a vehicle with extremely bright headlights approached from behind. Kleinschnitz did not realize the other vehicle was a police cruiser. The police cruiser was driven by Phares. After following Kleinschnitz closely for a period of time, Phares activated his beacons and siren without any basis for doing so. Since Kleinschnitz considered the part of town he was in to be unsafe, he activated his emergency flashers, lowered his window, and waved his hand at Phares in an attempt to indicate that he was looking for a safe place to stop his vehicle.

Driving at an extremely slow rate of speed, Kleinschnitz approached the playground at Westgate park. When he saw no one else present at the playground, he continued on

Watley Drive to find what he believed to be a safe place to stop. Kleinschnitz also saw no one at the Westgate Tennis Center as he passed, so he continued driving. At this point, Kleinschnitz heard a verbal demand by Phares that he "pull over." Kleinschnitz continued to drive at an extremely slow rate of speed and called his mother on his cell phone to ask her what he should do. Kleinschnitz's mother told him to pull over in an area with adequate light and other people present. As he approached the intersection of Watley Drive and Westgate Parkway, Kleinschnitz took a left onto Westgate Parkway. Kleinschnitz believed it was not safe to pull over due to other traffic, and he ended his call with his mother so he could pull into an upcoming Chevron service station.

    Kleinschnitz then called 911 to confirm that it was a police officer following him and to explain to the dispatch operator that he was attempting to find a safe place to stop. When Kleinschnitz connected with a 911 operator, he told her that someone was attempting to pull him over and that he was going to the Chevron station since it would have adequate lighting and people present. Kleinschnitz heard the operator tell Phares at least two times that "he's trying to pull over." The operator told Kleinschnitz to pull into the Chevron station and stated that police officers had been placed on alert because of a robbery in the area.

    Kleinschnitz parked in the Chevron parking lot, and the operator told him to place his hands on the steering wheel so Phares could see them. The operator then told him to exit his vehicle. After exiting his vehicle, Phares and several other officers were waiting with their guns drawn on Kleinschnitz. Phares ordered Kleinschnitz to walk backwards to the rear of his truck, squat on his knees, and lie face down on the parking lot. Phares then handcuffed

4

Kleinschnitz and yelled "why didn't you pull over?" Kleinschnitz responded that he was searching for a safe, lighted area, to which Phares responded, "you don't feel safe and you are a grown boy?" After Kleinschnitz was placed in a police cruiser, Phares again stated "so you're telling me a big ole 19 year old boy like you didn't feel safe?" Kleinschnitz was then arrested for obstructing governmental operations. He was booked and then released on bail. Kleinschnitz eventually obtained a judgment of acquittal on the charge.

Kleinschnitz also alleges that Dothan police officers have procedural orders that citizens may drive at or below the speed limit to find a safe place to pull over when they are driving at night and are not sure that the car attempting to pull them over is a police vehicle. At some time around May 2010, Benton, Chief of Police for the City of Dothan, stated this policy in a video press release. In response to the question, "So if someone is out late at night, and you see a blue light in your rear view mirror, and you think it may or may not be a police car, then your advice is to proceed at a safe speed, the posted speed limit or maybe even a little slower, to a well-lit area, before you stop?," Benton responded, "Correct." Benton also stated that Dothan police officers have procedural orders that these situations can occur and that they should be "wary" of such situations.

## IV. DISCUSSION

Kleinschnitz brings claims against Phares for § 1983 unlawful arrest (Count 1), § 1983 false imprisonment (Count 2), state law false arrest and false imprisonment (Count 5), assault and battery (Count 6), and intentional infliction of emotional distress (Count 7). He also brings claims against Phares and Benton for § 1983 malicious prosecution (Count 3),

5

negligence (Count 8), and state law malicious prosecution (Count 10). Finally, he brings a § 1983 "deliberate indifference" claim against Benton and the City of Dothan (Count 4)[2], and a claim of neglectfulness, unskillfulness, and carelessness against the City of Dothan (Count 9). Kleinschnitz concedes that he has failed to adequately allege claims for § 1983 malicious prosecution (Count 3) against Phares and Benton and state law malicious prosecution against Benton (Count 10),[3] and requests the Court to dismiss these claims without prejudice. Accordingly, Count 10 as to Benton only and Count 3 are DISMISSED without prejudice. Kleinschnitz also concedes that he has failed to adequately state a claim for intentional infliction of emotional distress (Count 7). Count 7 is accordingly DISMISSED with prejudice.[4] The Court will consider the remaining claims Defendants have moved to dismiss.

## I.  Federal Claims

### A.  § 1983 Unlawful Arrest and Qualified Immunity (Count 1)

Count 1 of Kleinschnitz's complaint alleges Phares arrested Kleinschnitz without a

---

[2] The pleadings make clear that this is a cause of action for municipal liability based on Benton's alleged role as a final policymaker for the City of Dothan. *See Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986). Defendants do not move to dismiss this claim.

[3] Defendants do not move to dismiss the state law malicious prosecution claim (Count 10) as to Phares. (Doc. #10, at 17–18.)

[4] The Court dismisses this count with prejudice because Kleinschnitz's complaint fails to raise a plausible claim for intentional infliction of emotional distress ("IIED"), and the Court is confident that discovery in this case would not lead to any set of facts that could support such a claim under Alabama law. *See Thomas v. BSE Indus. Contractors, Inc.*, 624 So. 2d 1040, 1044 (stating that under Alabama IIED is a "very limited cause of action that is available only in the most egregious circumstances").

warrant or probable cause in violation of his Fourth Amendment right to be free from unreasonable seizure.[5] Defendants move to dismiss Count 1 on the basis of qualified immunity and argue that Phares had arguable probable cause to believe Kleinschnitz violated either Ala. Code § 13A-10-2 (Obstructing Governmental Operations) or Ala. Code § 32-5A-4 (Failure to Comply with Lawful Order of Police Officer Regulating Traffic).[6] Based on the allegations in the complaint, the Court finds that Phares is not entitled to qualified immunity for the arrest of Kleinschnitz.

Qualified immunity is an affirmative defense that may be asserted on a pretrial motion to dismiss under Rule 12(b)(6) for failure to state a claim. *Skrtich v. Thornton*, 280 F.3d 1295, 1306 (11th Cir. 2002). Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (citation and quotation

---

[5] Kleinschnitz styles Count 1 as a § 1983 claim for "Excessive Force/Unlawful Arrest and Seizure." (Doc. #1.) However, Kleinschnitz concedes that he does not state a separate Fourth Amendment violation for excessive force. (Doc. #18, at 7.) In the Eleventh Circuit, "where an excessive force claim is predicated solely on allegations the arresting officer lacked the power to make the arrest, the excessive force claim is entirely derivative of, and is subsumed within, the unlawful arrest claim." *Bashir v. Rock Cnty.,* 445 F.3d 1323, 1332 (11th Cir. 2006). This is exactly what Kleinschnitz alleges in Count 1, and he concedes he does not state a separate claim for excessive force. (Doc. #18, at 7.) Therefore, the Court construes Count 1 as asserting only an illegal seizure/arrest claim against Phares under § 1983.

[6] Although Kleinschnitz was never charged with violating Ala. Code § 32-5A-4, Phares is entitled to qualified immunity if there was arguable probable cause to arrest Kleinschnitz for any offense, regardless of whether Kleinschnitz was actually charged for that offense. *See Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (citing *Whren v. United States*, 517 U.S. 806, 811–13 (1996)).

omitted). Courts apply a two-part test for determining whether qualified immunity applies. The Court must (1) determine whether the plaintiff's allegations, if true, establish a constitutional violation; and (2) if the facts taken in the light most favorable to the plaintiff establish a constitutional violation, determine whether the right violated was "clearly established." *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010) (citations omitted).

An arrest without a warrant and lacking probable cause violates the Fourth Amendment and can underpin a § 1983 claim, but the existence of probable cause at the time of arrest is an absolute bar to a subsequent constitutional challenge to the arrest. *See Brown*, 603 F.3d at 734. Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime. *Skop v. City of Atlanta*, 485 F.3d 1130, 1137 (11th Cir. 2007) (citation and quotation omitted). To receive qualified immunity, an officer need not have actual probable cause but only "arguable" probable cause. *Holmes v. Kucynda*, 321 F.3d 1069, 1079 (11th Cir. 2003). Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the defendant could have believed that probable cause existed to arrest the plaintiff. *Brown*, 608 F.3d at 734 (citation and quotation omitted). Whether arguable probable cause exists depends on the elements of the crime and the particular facts. *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1333 (11th Cir. 2004).

### 1. Obstructing Governmental Operations

A person commits the crime of obstructing governmental operations if "by means of intimidation, physical force or interference or by any other independently unlawful act, he: (1) [i]ntentionally obstructs, impairs or hinders the administration of law or other governmental functions; or (2) [i]ntentionally prevents a public servant from performing a governmental function." Ala. Code § 13A-10-2 (1975). The public servant must be legally authorized to undertake the action in question in order for interference to constitute obstruction. In other words, this statute "would not apply to illegal action by a public servant in performing an unauthorized function." Commentary, Ala. Code § 13A-10-2; *see also A.A.G. v. State*, 668 So. 2d 122, 126 n. 1 (Ala. Crim. App. 1995) (citing this statement from the Commentary to Alabama's criminal code and holding that police had probable cause to enter defendant's home before finding her guilty of obstruction of the officers' search of her home); *Strange v. City of Tuscaloosa*, 652 So. 2d 773, 775 (Ala. Crim. App. 1994) (reversing conviction for obstruction under similarly-worded city ordinance because, although defendant physically resisted police, they entered her home in violation of the Fourth Amendment). In addition, a defendant must intend to interfere with or to prevent a public servant's performance of an official duty to be guilty of obstruction. *See* Commentary, Ala. Code § 13A-10-2 (stating the statute "imposes a uniform mens rea requirement that the accused act with intent to obstruct the . . . governmental function, or that he intentionally prevents a public servant from performing a governmental function"). The Court finds that Phares lacked arguable probable cause to arrest Kleinschnitz for obstruction because Phares's initial attempt to stop Kleinschnitz was illegal and because Phares had information

9

conclusively establishing that Kleinschnitz lacked the necessary mens rea required for obstruction.

With respect to the legality of Kleinschnitz's arrest, the complaint alleges that Phares activated his beacons and sirens and attempted the initial stop of Kleinschnitz "without any legitimate basis whatsoever." (Doc. #1, ¶ 21.) If Phares lacked information establishing either actual or arguable probable cause that Kleinschnitz was committing a crime, or the reasonable suspicion required for a *Terry* stop, then Phares lacked legal authority to stop Kleinschnitz. *See Terry v. Ohio*, 392 U.S. 1 (1968). Kleinschnitz could not be guilty of obstruction for refusing to stop when such a seizure was not legally authorized and was instead a violation of his Fourth Amendment rights. Under the facts alleged in the complaint, Kleinschnitz is like the defendant in *Strange v. City of Tuscaloosa*, who was not guilty of obstruction in resisting police officers' unauthorized entry into a bedroom of her home because the officers' information that a male and female had been fighting in the street did not give them probable cause to search her home and bedroom. 652 So. 2d at 776; *contrast with A.A.G.*, 668 So. 2d at 126–27 (finding probable cause to arrest plaintiff for obstruction when she resisted police officers' search of her home since they had probable cause for their search based on the activation of the home's burglar alarm and the lack of contact with the homeowners due to the telephone being disconnected). Accepting Kleinschnitz's allegations as true and reading them in the light most favorable to him, the Court finds that Phares lacked any basis or legal authority to initially stop Kleinschnitz, and therefore lacked arguable probable cause to arrest him for obstruction when he failed to stop.

The Court further finds that Phares lacked arguable probable cause to arrest Kleinschnitz for obstruction because Phares had information that would establish to a reasonable officer that Kleinschnitz lacked the necessary mens rea of intent. After Phares attempted his initial stop by activating his beacons and siren, Kleinschnitz turned on his emergency flashers, lowered his window, and waved his hand in an attempt to indicate that he acknowledged Phares but was looking for a safe place to pull over.   (Doc. #1, ¶ 23.) Kleinschnitz subsequently continued to drive at an extremely low rate of speed and explained to the 911 dispatch operator that he was looking for a safe place to stop his vehicle. (Doc. #1, ¶ 29–30.) The 911 operator told Phares at least two times that Kleinschnitz was "trying to pull over." (Doc. #1, ¶ 31.)  Based on this, a reasonable police officer "in the same circumstances and possessing the same knowledge as" Phares could not have believed there was probable cause to arrest Kleinschnitz. *Brown*, 608 F.3d at 734. Rather, a reasonable officer would have known that Kleinschnitz was attempting to comply with Phares's request to pull over, but out of safety concerns, did not want to pull over until he reached a well-lit area with other people present. *Cf. A.A.G.,* 668 So. 2d at 128–29 (finding requisite intent for obstruction where, after officers explained they were responding to a burglar alarm, defendant continually jumped up from a couch, flailed her arms, struck the police officer repeatedly, and ran into a hallway, which prevented another officer from conducting a *Terry* sweep of the house).   Since Phares lacked initial authority to stop Kleinschnitz, and, independently of this, knew or should have known that Kleinschnitz lacked intent to obstruct any governmental function, Phares lacked arguable probable cause to arrest Kleinschnitz for

11

obstruction.

### 2. Failure to Comply with a Lawful Order of a Police Officer Regulating Traffic

Although Kleinschnitz was not charged with this offense, Phares argues that he is entitled to qualified immunity for his arrest of Kleinschnitz because Kleinschnitz could have been arrested for a violation of Ala. Code § 32-5A-4. This statute states that "[n]o person shall willfully fail or refuse to comply with any lawful order or direction of any police officer or fireman invested by law with authority to direct, control or regulate traffic." Ala. Code § 32-5A-4 (1975). Similarly to obstruction, failure to comply requires the police officer's order to be "lawful." The Alabama Court of Criminal Appeals has stated that "for an order of a police officer to be 'lawful' pursuant to [§ 32-5A-4], such order must be directly related to the direction, control and regulation of traffic." *Coughlin v. State*, 320 So. 2d 739, 742 (Ala. Crim. App. 1975). In addition to the requirement that a police officer's order be lawful, the defendant's refusal to comply with the order must be "willful." An act is "willful" if it "is one of premeditated wrong, an act done with evil intent or bad motive or purpose, unlawful, and without legal justification . . . Such is the meaning of the word as it is found in our penal statutes . . . ." *Parker v. Sutton*, 254 So. 2d 425, 431 (Ala. Civ. App. 1971); *see also Roe v. Lewis*, 416 So. 2d 750, 754 (Ala. 1982) (stating that willfulness "denotes an intention to cause an injury"). As in the case of obstruction, the Court finds that Phares lacked arguable probable cause to arrest Kleinschnitz for failure to comply because Phares's initial attempt to stop Kleinschnitz was illegal and because Phares had information

12

conclusively establishing that Kleinschnitz lacked the necessary mens rea to violate the statute.

Phares argues that he had arguable probable cause to believe Kleinschnitz committed the offense of failure to comply when he failed to pull over after Phares gave him a verbal order to do so. (Doc. #10, at 9.) But since Phares attempted to stop Kleinschnitz "without any legitimate basis whatsoever," (Doc. #1, ¶ 21), his order to Kleinschnitz to pull over was not lawful. Phares cannot convert an unlawful stop of a vehicle into a lawful one by simply adding the command to pull over. *See Coughlin*, 320 So. 2d at 742 (stating the failure to comply statute "was not intended to, does not, and cannot give police officers unbridled power to arrest for refusal to obey any order they may choose to direct at a citizen"). Indeed, Alabama law upholds convictions for failure to comply incident to a traffic stop when the police officer had constitutional authority to make the initial stop. *See Ex parte Duvall*, 782 So. 2d 244, 248 (Ala. 2000) (applying State-agent immunity to defendant conservation officers because they had reasonable suspicion to justify *Terry* stop of vehicle and statutory authority to issue order to produce driver's license); *Duncan v. State*, 686 So. 2d 1279, 1280–82 (Ala. Crim. App. 1996) (upholding conviction where officer had authority to pull over defendant for crossing the center line of a divided highway and statutory authority to request to see defendant's driver's license but defendant refused to comply); *Sly v. State*, 387 So. 2d 913, 915–16 (Ala. Crim. App. 1980) (upholding conviction where officer had authority to pull over defendant for a defective headlight and statutory authority to request to see defendant's driver's license once he had been pulled over). Since, as alleged, Phares

13

had no authority to stop Kleinschnitz's vehicle, his verbal demand for Kleinschnitz to pull over does not create arguable probable cause to arrest Kleinschnitz for failure to comply because the order was not "lawful" within the meaning of the statute.

Phares also lacked arguable probable cause to arrest Kleinschnitz for failure to comply because Phares had information that would establish to a reasonable officer that Kleinschnitz lacked the necessary mens rea of willfulness. Kleinschnitz's hand signal to Phares, the activation of his emergency flashers, the contact with the 911 operator, and the 911 operator's explanation to Phares that Kleinschnitz was trying to pull over should establish to a reasonable officer in the same position as Phares that Kleinschnitz was not willfully disobeying Phares's order relating to a traffic regulation. A reasonable officer in the same circumstances and possessing the same knowledge as Phares would know that Kleinschnitz intended to pull over at the first place he felt was safe, and that he was not acting with "evil intent or bad motive or purpose, unlawful[ly], and without legal justification," *Parker,* 254 So. 2d at 431, or with "an intention to cause an injury." *Roe,* 416 So. 2d at 754. Since a reasonable officer in the same circumstances would have known the required mental state of willful disobedience was lacking, Phares lacked arguable probable cause to arrest Kleinschnitz for failure to comply.

### 3.     **Clearly Established Law**

Since Phares lacked arguable probable cause to arrest Kleinschnitz for either obstruction or failure to comply, the Court must determine whether the constitutional rights Phares violated were clearly established at the time. *See Brown*, 603 F.3d at 734. Binding

14

precedent in the Eleventh Circuit existing at the time of Kleinschnitz's arrest clearly established that an arrest made without arguable probable cause violates the Fourth Amendment's prohibition on unreasonable searches and seizures.  *See Skop*, 485 F.3d at 1143–44.  Because the factual allegations in Kleinschnitz's complaint, taken as true for the purposes of deciding this motion, demonstrate that Phares lacked arguable probable cause to arrest Kleinschnitz, Phares is not entitled to qualified immunity.  Thus, Defendants' motion to dismiss Kleinschnitz's § 1983 claim for unlawful arrest as alleged in Count 1 is thus due to be DENIED.[7]

### B.     § 1983 False Imprisonment and 12(b)(6) (Count 2)

Kleinschnitz alleges a § 1983 false imprisonment claim against Phares on the grounds that Phares detained him subsequent to an arrest that occurred without probable cause.[8]  To state a claim for § 1983 false imprisonment, a plaintiff must allege sufficient facts to establish the common law elements of false imprisonment and a due process violation under the Fourteenth Amendment.  *Cannon v. Macon Cnty.*, 1 F.3d 1558, 1562–63 (11th Cir. 1993).  The elements of common law false imprisonment are (1) intent to confine; (2) acts resulting

---

[7] The Court notes that Defendants also moved to dismiss Kleinschnitz's § 1983 unlawful arrest claim under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. However, because the Court has already found that Phares lacked any probable cause to arrest Kleinschnitz for either obstruction or failure to comply, the Court is satisfied that Kleinschnitz has adequately pled his § 1983 unlawful arrest claim.  As a result, to the extent Defendants seek dismissal of Kleinschnitz's § 1983 unlawful arrest claim under Rule 12(b)(6), that motion is DENIED.

[8] Kleinschnitz confusingly styles Count 2 as § 1983 "False Arrest/False Imprisonment." Since Count 1 alleges a § 1983 unlawful arrest, the Court construes Count 2 as alleging only a § 1983 false imprisonment claim to avoid duplicative claims.

15

in confinement; and (3) consciousness of the victim of confinement or resulting harm. *Id*. at 1562 n. 3 (citation and quotation omitted). The Fourteenth Amendment includes a due process right to be free from continued detention after the state should have known the detainee was entitled to release. *West v. Tillman*, 496 F.3d 1321, 1327 (11th Cir. 2007). To establish such a violation, a plaintiff must show that the defendant acted with deliberate indifference to the plaintiff's due process rights. *Id.* (citation omitted) A plaintiff must show the defendant had (1) subjective knowledge of a risk of serious harm; and (2) the defendant disregarded that risk; (3) by conduct that is more than mere negligence. *Id*. (citation and quotation omitted). The Court finds that Kleinschnitz has failed to allege sufficient facts to state a cause of action for § 1983 false imprisonment.[9]

While the Court finds that Phares was objectively unreasonable in his arrest of Kleinschnitz, Kleinschnitz nonetheless falls short of properly alleging that Phares had subjective knowledge that Kleinschnitz was entitled to be released and that he disregarded this knowledge. In fact, Kleinschnitz attempts to simply tack his § 1983 false imprisonment claim on to his unlawful arrest claim. But a detention subsequent to an unlawful arrest does not automatically establish a § 1983 false imprisonment claim because the plaintiff must establish subjective deliberate indifference for the latter claim. The deliberate indifference standard is "a difficult burden for a plaintiff to meet." *Popham v. City of Talladega*, 908 F.2d 1561, 1563 (11th Cir. 1990). Since Kleinschnitz alleges no additional facts to establish that

---

[9] Because the Court determined that Kleinschnitz has failed to allege sufficient facts to state a cause of action for § 1983 false imprisonment, the qualified immunity analysis is unnecessary.

Phares was deliberately indifferent to his right to be released during the brief detention following his unlawful arrest, Defendants' motion to dismiss Kleinschnitz's § 1983 false imprisonment claim as alleged in Count 2 of the complaint is GRANTED.

## II.     State Claims

### A.     State Law Immunity

Kleinschnitz asserts state law claims for false arrest, false imprisonment, and assault and battery against Phares. Phares asserts the defense of both State-agent immunity and discretionary-function immunity. State-agent immunity derives from Alabama's constitution and shields state employees from civil liability unless they act "willfully, maliciously, fraudulently, in bad faith, beyond [their] authority, or under a mistaken interpretation of the law," or if the Constitution or laws of the United States or Alabama require otherwise. *Ex parte Cranman*, 792 So. 2d 392, 405 (Ala. 2000). In addition to State-agent immunity, Alabama law also provides discretionary-function immunity from tort liability to law enforcement officers acting within the scope of their discretionary law enforcement duties. Ala. Code § 6-5-338(a) (1975). The *Cranman* test for State-agent immunity also determines whether a police officer is entitled to discretionary-function immunity under § 6-5-338(a). *Ex parte City of Tuskegee*, 932 So. 2d 895, 904 (Ala. 2005). If the State agent establishes that he was exercising a discretionary function with respect to the incident in question, then the burden shifts to the plaintiff to show that the State agent acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority. *Downing v. City of Dothan*, 59 So. 3d 16, 20 (Ala. 2010). Phares was acting within the scope of his discretionary authority

when he stopped and arrested Kleinschnitz. *See Telfare v. City of Huntsville*, 841 So. 2d 1222, 1228 (Ala. 2002) ("Generally, arrests and attempted arrests are classified as discretionary functions."). Therefore, Kleinschnitz bears the burden of alleging sufficient facts to establish that Phares's actions are not entitled to either State-agent or discretionary-function immunity.

### 1. False Arrest/False Imprisonment (Count 5)

Under Alabama law, false imprisonment is the "unlawful detention of the person of another for any length of time whereby he is deprived of his personal liberty." Ala. Code § 6-5-170 (1975). In determining whether a police officer receives State-agent or discretionary-function immunity from civil liability for making an arrest, Alabama applies the federal standard of arguable probable cause. *Borders v. City of Huntsville*, 875 So. 2d 1168 (2003). The Court has already determined that Phares lacked arguable probable cause to arrest Kleinschnitz, and placing someone under arrest without probable cause constitutes false imprisonment. Therefore, Phares is not entitled to State-agent or discretionary-function immunity for the state law claim of false arrest/false imprisonment. Defendants' motion to dismiss Count 5 is, therefore, DENIED.

### 2. Assault and Battery (Count 6)

Kleinschnitz also alleges assault and battery based on Phares pointing his gun at Kleinschnitz and placing him under arrest. (Doc. #1, ¶ 103.) Before any force can be used in making an arrest, probable cause must exist to make a lawful arrest. *Franklin v. City of Huntsville*, 670 So. 2d 848, 852 (Ala. 1995). Since the Court found Phares lacked arguable

probable cause to arrest Kleinschnitz, Phares was not entitled to use any force against Kleinschnitz, including pointing a gun at Kleinschnitz and handcuffing him. Therefore, Phares is not entitled to State-agent or discretionary-function immunity for Kleinschnitz's assault and battery claim, and Defendants' motion to dismiss Count 6 is DENIED.

### B. Negligence against Benton and Phares (Count 8), Neglectfulness against the City of Dothan (Count 9) and 12(b)(6)

Kleinschnitz asserts negligence against Benton and Phares and neglectfulness against the City of Dothan based on the negligence of Benton and Phares. A city can be held liable for the "neglect, carelessness or unskillfulness" of an "agent, officer, or employee" of the city acting in the course of his or her duty. Ala. Code § 11-47-190 (1975). Kleinschnitz has not alleged a single fact concerning which acts were negligent on the part of Phares or Benton, which is necessary to raise his negligence claim above the speculative level. *See Iqbal*, 556 U.S. at 677–78. Kleinschnitz does not identify a duty of care or suggest how Phares or Benton breached this duty. Counts 8 and 9 are clear examples of the type of "formulaic recitation of the elements" denounced in *Twombly*. 550 U.S. at 555. Although Kleinschnitz has sufficiently pled state law claims for false imprisonment and assault and battery against Phares, these are intentional torts for which the City of Dothan cannot be held liable under § 11-47-190. *See Walker v. City of Huntsville*, 72 So. 3d 474 (Ala. 2010). Thus, since Kleinschnitz fails to state a claim for negligence against Phares and Benton, he also fails to state a claim for municipal liability for employee negligence against the City of Dothan, and Defendants' motion to dismiss Counts 8 and 9 is GRANTED.

## V. CONCLUSION

Accordingly, it is hereby ORDERED as follows:

1.      Defendants' Motion to Dismiss (Doc. #9) Kleinschnitz's § 1983 unlawful arrest claim (Count 1), state law false arrest/false imprisonment claim (Count 5), and state law assault and battery claim (Count 6) is DENIED;

2.      Defendants' Motion to Dismiss (Doc. #9) Kleinschnitz's claims for § 1983 false imprisonment (Count 2), § 1983 malicious prosecution (Count 3), negligence (Count 8), state law municipal liability (Count 9), and state law malicious prosecution as to Benton (Count 10) is GRANTED, and these claims are DISMISSED without prejudice;

3.      Defendants' Motion to Dismiss (Doc. #9) Kleinschnitz's claim for intentional infliction of emotional distress (Count 7) is GRANTED, and this claim is DISMISSED with prejudice;

DONE this the 28th day of October, 2013.

/s/   Mark E. Fuller<br>
UNITED STATES DISTRICT JUDGE